# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2404-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LAWRENCE COHEN, a/k/a
LAWRENCE J. COHEN,
CORY COHEN,
JASON COHEN, LARRY
COHEN, and LARRY
LAURENT,

     Defendant-Appellant.

_____

Submitted November 14, 2024 – Decided December 9, 2024

Before Judges Mawla, Natali, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment Nos. 19-05-0813 and 21-06-0448.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Boris Moczula, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Lawrence J. Cohen appeals from two March 10, 2023 judgments of conviction for violations of his special conditions of community supervision for life (CSL), N.J.S.A. 2C:43-6.4(d), and the September 29, 2022 order denying his motion to dismiss the indictments. We affirm.

I.

In 1997, defendant was indicted by a Monmouth County grand jury for: second-degree attempted aggravated sexual assault, N.J.S.A. 2C:5-1 and 2C:14-2(a)(1); second-degree conspiracy to commit aggravated sexual assault, N.J.S.A. 2C:5-2 and 2C:14-2(a)(1); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(a); and three counts of fourth-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(b). The State alleged defendant communicated through an online chat room with an undercover officer who defendant believed had access to an eleven-year-old child. During those conversations, defendant sent the officer images of children engaged in anal and oral sex, and eventually arranged to meet the officer at a hotel to have sex with the child.

He pleaded guilty to second-degree attempted aggravated sexual assault and separately pleaded guilty to "related federal offenses involving child pornography." Defendant was sentenced to seven years in prison, concurrent to a ten-year sentence he was already serving on the federal charges. The sentence included Megan's Law supervision, N.J.S.A. 2C:7-1 to -23, and a special sentence of CSL. At the time of sentencing, the court found "defendant must be closely supervised when released from prison as he appears to be unstable and a menace to young children." On January 9, 2006, defendant was released from custody and began serving his special CSL sentence.

Among other conditions not relevant to this appeal, defendant's special conditions of CSL include the following computer restriction:

> [He is] to refrain from the possession, procurement, purchase or utilization of a computer which includes any equipment, device or appliance that permits access to any form of computer network, bulletin board, internet, e-mail service, or other exchange format unless specifically authorized by the [d]istrict [p]arole [s]upervisor. If authorized to utilize a computer for employment purposes, [he is] to maintain a daily log of all addresses accessed other than for authorized employment and make this log available to the assigned parole officer. If authorized to utilize a computer, [he] agree[s] to install on [his] computer, at [his] expense, one or more hardware or software equipment, device or appliance designed to monitor computer usage, if such installation of the items is determined to be necessary by the [d]istrict [p]arole [s]upervisor.

3

Defense counsel argued to the trial court defendant "repeatedly asked the parole officer to take these conditions off, and they[ have] repeatedly denied him." The State contends there is no evidence defendant ever sought removal of the computer restriction and never availed himself of the opportunity to use a computer subject to appropriate parole supervision and monitoring. The record is devoid of any evidence that defendant requested his parole officer remove or modify the computer restriction.

The State contends that in 2013 and 2014, defendant was charged in Monmouth County Indictment Nos. 13-05-843 and 14-12-2040 with offenses including "stalking" and "distribution of child sexual abuse materials" that resulted in alleged CSL violations. Those indictments were dismissed because defendant was found not competent to stand trial. According to defense counsel, defendant was found not competent because he was "unable to separate the delusion of being sexually abused at a younger time" from the criminal conduct alleged in those indictments. Defense counsel advised the trial court, "the delusion is not something you could turn off like a spigot. It is always there . . . ." Defendant however argued to the trial court that his delusions were irrelevant to the present charges.

On December 10, 2018, defendant's parole officer received a report from

A-2404-22

the Manalapan Township Police Department (MTPD) regarding an online dispute defendant had with a vendor on the website Etsy.com. The vendor expressed concern that defendant was a threat to the community based on aggressive emails she received from him about a replica dagger he sought to purchase online for use in live action role-playing. Attached to the report were two online profile pages on the website "Deviantart.com" under the profile names "Geoffryn" and "Jasryn" that allegedly belonged to defendant. On the profile page under the screenname "Geoffryn," there were several images of prepubescent boys with comments of a sexual nature indicating the desire "to tickle the boys until they urinate."

On December 14, 2018, parole officers went to defendant's residence to conduct an interview and search his residence. They seized a Toshiba laptop computer, a Kindle device, three flip phones, an LG phone, computer thumb drives, a Verizon Mifi, and a modem. On May 31, 2019, a Monmouth County grand jury returned Indictment No. 19-05-813-I (the 2019 Indictment) charging defendant with three counts of fourth-degree violation of CSL, including unauthorized possession of the laptop computer.

In March 2020, the MTPD contacted defendant's parole officer after a supermarket employee in the township reported defendant was in the store using

a laptop computer to access the public WiFi network. Surveillance video showed defendant seated in the upstairs portion of the supermarket using a laptop. Parole officers went to defendant's home and conducted a search during which they seized a Hewlett Packard laptop computer, two flash drives, and two knives with approximately six-inch blades described by the State as daggers.

At the time of the search, defendant provided a signed statement to his parole officer contending: "I did nothing wrong or illegal. I fully expect parole to approve computer use for [legal] purposes – I do [not] intend to break any laws. I am in pain, I had surgery, and I[ am] trying to [k]eep [c]onstructively busy." On June 7, 2021, a Monmouth County grand jury returned Indictment No. 21-06-0448-I (the 2021 Indictment) charging defendant with two additional counts of fourth-degree violation of CSL, including unauthorized possession of the laptop computer.

Defendant moved separately to dismiss the 2019 and 2021 Indictments, arguing, relevant to the charges based on unauthorized possession of a computer, the prohibition on using computers is unconstitutional as applied to him. Specifically, counsel asserted "the argument . . . is not necessarily the facial argument but as applied to [defendant]." Counsel argued, "just because the parole board has discretion does[ not] mean that they can simply avoid

exercising their discretion or denying things where it[ is] inappropriate and unreasonable to do so."

Counsel argued "[t]here is technology that can be used that[ is] less restrictive than a total ban" that "would permit [the parole board] to view any site that [defendant] viewed . . . [and] check him periodically or every day . . . and monitor exactly what he is doing." Counsel represented defendant would be "more than willing to accommodate" those restrictions.

On September 29, 2022, the court heard oral argument and entered an order denying defendant's motions supported by an oral opinion.[1] Without addressing defendant's constitutional arguments, the court found that the State presented sufficient evidence to the grand jury to support its probable cause determination, stating:

> That[ is] clearly an issue that the [c]ourt cannot dismiss to say that in the grand jury transcript there was not enough evidence to move forward. It is a low standard when we[ are] talking about indictments. Here, it[ is] not a beyond a reasonable doubt as it would be at trial.

On December 19, 2022, defendant pleaded guilty to two counts of fourth-

---

[1]  All other counts alleging CSL violations unrelated to the possession of a computer were either dismissed by the court or voluntarily by the State. This appeal is limited to the court's denial of defendant's motion to dismiss the counts alleging unauthorized possession of a computer.

degree violation of a condition of CSL for unauthorized possession of a computer capable of accessing the internet. Defendant admitted that, on December 14, 2018, and March 6, 2020, while he was serving his sentence of CSL, he knowingly violated one of the conditions of CSL by possessing a laptop computer capable of accessing the internet, without informing his parole officer. In exchange for defendant's guilty plea, the State agreed to recommend a sentence limited to imposition of mandatory fines and penalties. On March 10, 2023, the court sentenced defendant in accordance with the plea agreement and continued his special sentence of CSL.

On appeal, defendant raises the following points for our consideration.

POINT I

THE SPECIAL CONDITION OF COMMUNITY SUPERVISION FOR LIFE IMPOSING A TOTAL BAN ON THE DEFENDANT FROM OWNING, POSSESSING, OR USING A COMPUTER IS UNCONSTITUTIONAL.

A. The Computer Ban Facially Violates The First Amendment Because It Is Overbroad.

B. The Computer Ban Is Also Unenforceable As Applied To [defendant] Because The Condition Is Vague.

C. The Condition Is Not Tailored To [defendant] In Any Way, And Is Thus Unenforceable With Respect To Him.

II.

"We consider legal and constitutional questions de novo." State v. Galicia, 210 N.J. 364, 381 (2012). Content-neutral restrictions on speech are subject to what is characterized as intermediate scrutiny. Turner Broad. Sys. v. F.C.C., 512 U.S. 622, 642 (1994). "In order to survive intermediate scrutiny, a law must be 'narrowly tailored to serve a significant governmental interest.'" Packingham v. North Carolina, 582 U.S. 98, 105-06 (2017) (quoting McCullen v. Coakley, 573 U.S. 464, 486 (2014)). This means that "the law must not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" Id. at 106 (quoting McCullen, 573 U.S. at 486). "[A] condition [of supervised release] is 'not "narrowly tailored" if it restricts First Amendment freedoms without any resulting benefit to public safety.'" United States v. Holena, 906 F.3d 288, 294 (3d Cir. 2018) (quoting United States v. Loy, 237 F.3d 251, 266 (3d Cir. 2001)).

To show a statute is facially unconstitutional, "'the challenger must establish that no set of circumstances exists under which the [statute] would be valid.'" Dempsey v. Alston, 405 N.J. Super. 499, 510 (App. Div. 2009) (alteration in original) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). "[T]he question is whether the 'mere enactment' of a statute offends

A-2404-22

constitutional rights."  Ibid. (quoting Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264, 295 (1981)).

"CSL is a 'component' of Megan's Law, which 'has its statutory source in N.J.S.A. 2C:43-6.4, the Violent Predator Incapacitation Act.'"  State v. R.K., 463 N.J. Super. 386, 400 (App. Div. 2020) (quoting State v. Schubert, 212 N.J. 295, 305 (2012)).  CSL "was 'designed to protect the public from recidivism by defendants convicted of serious sexual offenses.'"  Jamgochian v. N.J. State Parole Bd., 196 N.J. 222, 237-38 (2008) (quoting Sanchez v. N.J. State Parole Bd., 368 N.J. Super. 181, 184 (App. Div. 2004)).  Conditions of supervised release are intended to advance the State's interest in "protect[ing] the public and foster[ing] rehabilitation," N.J.S.A. 2C:43-6.4(b), as well as "reduc[ing] the likelihood of recurrence of criminal or delinquent behavior."  N.J.S.A. 30:4-123.59(b)(1)(a).

With respect to constitutional challenges to special conditions of parole, we held in Pazden v. N.J. State Parole Board, "a special condition of parole that cannot pass constitutional muster in the same strict sense that we demand of other statutes with penal consequences must fail."  374 N.J. Super. 356, 370 (App. Div. 2005).  As such, we apply the same constitutional analysis for a special condition of parole as we would to a statute with penal consequences.

It is well-settled that the parole board may impose appropriately-tailored restrictions on a sex offender sentenced to CSL, including restrictions on internet access, if the restrictions "bear a reasonable relationship to reducing the likelihood of recidivism and fostering public protection and rehabilitation." J.I. v. N.J. State Parole Bd., 228 N.J. 204, 222 (2017).  Defendant does not contend otherwise.

In J.I., our Supreme Court invalidated a "near-total [i]nternet ban" stating "[t]he complete denial of access to the [i]nternet implicates a liberty interest, which in turn triggers due process concerns."  228 N.J. at 211.  "Internet conditions should be tailored to the individual CSL offender, taking into account such factors as the underlying offense and any prior criminal history, whether the [i]nternet was used as a tool to perpetrate the offense, the rehabilitative needs of the offender, and the imperative of public safety."  Id. at 224.  The Court held the ban in that case was "[a]rbitrarily imposed" and "not tethered" to the objectives of "promot[ing] public safety, reduc[ing] recidivism, and foster[ing] the offender's reintegration into society."  Id. at 211; see N.J.S.A. 2C:43-6.4(b).  Any internet access condition imposed on a CSL offender "must bear a reasonable relationship" to furthering those objectives.  J.I., 228 N.J. at 223.

After J.I., the United States Supreme Court decided Packingham v. North Carolina, invalidating a North Carolina statute criminalizing access to a social media website that the sex offender knew allowed minors to be members. 582 U.S. 98, 104 (2017). The Court held the statute violated the First Amendment and was overbroad because it prohibited access to commercial and news websites. Id. at 108-09.

We applied the J.I. factors in four consolidated appeals challenging social-networking, internet, and monitoring conditions, and upheld certain of those conditions. K.G. v. N.J. State Parole Bd., 458 N.J. Super. 1, 23-30 (App. Div. 2019). In one of the cases, we upheld a ban on internet access because:

> (1) [the] underlying offense involved the use of the [i]nternet and social-networking websites to solicit the minor; (2) [the defendant] consciously violated his previous [i]nternet-use conditions; [and] (3) [the defendant] had not yet demonstrated a substantial period of compliance with conditions of PSL[2] since his release from custody . . . .
>
> [Id. at 37.]

We concluded, given "the nature of [the defendant's] underlying offense and his history of violating PSL conditions restricting [i]nternet access," an

---

[2]  In 2003, the Legislature amended N.J.S.A. 2C:43-6.4 and replaced all references to CSL with PSL. See L. 2003, c. 266, § 2.

internet ban was "reasonably tailored to advance goals of public safety and rehabilitation and [was] not arbitrary, capricious, and unreasonable as applied to [that defendant]." Id. at 37-38.

In United States v. Holena, the defendant was subject to a condition of supervised release forbidding him from using the internet without his probation officer's approval. 906 F.3d at 290. After violating the provision, the defendant was forbidden from using any "computers, electronic communications devices, or electronic storage devices" for life. Ibid. The Third Circuit held the provisions were unconstitutional because they contradicted one another and were not reasonably tailored to the defendant's conduct and history. Id. at 291-92.

The court set forth three factors to consider in conducting the fact-sensitive analysis regarding an internet ban: "the restriction's length, its coverage, and 'the defendant's underlying conduct.'" Id. at 292 (quoting United States v. Heckman, 592 F.3d 400, 405 (3d Cir. 2010)). Similarly, in United States v. Eaglin, the Second Circuit reversed a categorical prohibition on the defendant's use of any device to access the internet because the prohibition was not warranted by the defendant's history or necessary to further the goals of deterrence, public safety, or rehabilitation. 913 F.3d 88, 99 (2d Cir. 2019).

13

In State v. R.K., the defendant argued his sentence was illegal because he was subject to an unconstitutional regulation imposing a social networking ban. 463 N.J. Super. at 392-93.  The regulation required all sexual offenders on CSL to "[r]efrain from using any computer and/or device to create any social networking profile or to access any social networking service or chat room in the offender's name or any other name for any reason unless expressly authorized by the [d]istrict [p]arole [s]upervisor." Id. at 401.  We concluded the regulation's "blanket social media prohibition is both unconstitutional on its face and as applied to R.K." because it infringed on his right to free speech.  Id. at 393.  Applying Packingham, we reasoned the automatic ban rendered the defendant's sentence invalid.  Id. at 409-10.  We stressed:

> [T]he [b]oard's regulations must avoid blanket bans on such valued rights.  Supervised release conditions must be specifically designed to address the goals of recidivism, rehabilitation, and public safety, which are specifically tied to the individual parolee's underlying offenses.  Statutes and regulations must not afford parole supervisors and officers unlimited personal discretion to determine what conditions are constitutionally permissive.
>
> [Id. at 417-18.]

Applying these principles, we conclude the computer restriction imposed in this case is not facially unconstitutional.  There is no dispute sex offenders on

14

CSL may be subject to appropriate limitations on the use of the internet and internet-connected devices, and such limitations may include supervision through electronic monitoring of internet-connected devices. In fact, defendant concedes it would be appropriate to "limit [his] access to sexually explicit material and allow the [parole board] to monitor his internet searches, website visits, and downloads."

Unlike the internet and social media bans at issue in J.I., Packingham, and R.K., the computer restriction here applies to devices with access to the internet, not to content accessed on the internet. The restriction is necessary to facilitate the parole board's implementation of appropriate supervision of the use of internet-connected devices, including monitoring through the installation of software or hardware. Without such a restriction, the parole board's imposition of appropriately-tailored supervision and monitoring effectively would be meaningless; the parole board would have no ability to prohibit the use of unmonitored, unsupervised devices. Because the computer restriction is narrowly tailored to accomplish the goal of imposing appropriate restrictions on the use of internet-connected devices, it is not facially unconstitutional.[3]

---

[3] An appellate court is "free to affirm the trial court's decision on grounds different from those relied upon by the trial court." State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011) (citation omitted).

A-2404-22

## III.

We decline to consider defendant's as applied challenge because he repeatedly and knowingly violated his conditions of CSL rather than seek modification of the conditions by lawful means. As our Supreme Court noted in J.I., "[w]e do not condone [such] violations because relief from overbroad or oppressive restrictions must be achieved through lawful means. A CSL offender must abide by the special conditions of [their] supervision unless and until relief is granted." 228 N.J. at 230; see K.G., 458 N.J. Super. at 36. In this case, rather than seek relief by lawful means from what he contends are unreasonable restrictions on his use of computers, defendant opted to ignore the restrictions until he was charged with multiple CSL violations for unauthorized possession of a computer. Defendant cannot be permitted to ignore his conditions of CSL and then complain only after he is charged with criminal conduct.

## IV.

We are not convinced by defendant's claim that the computer restriction is unenforceable as applied to him because it is vague. Due process principles "require[] that citizens be given adequate notice of what the law proscribes." State v. Morrison, 227 N.J. 295, 314 (2016). "The United States Supreme Court has defined the concept of void for vagueness in terms of whether a statute or

A-2404-22

regulation gives a person of ordinary intelligence fair warning of what conduct is prohibited . . . and whether it is specific enough to provide an explicit standard to guide its enforcement." Pazden, 374 N.J. Super. at 369 (citing Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972)).

However, if a person engages in conduct that is clearly proscribed, they cannot complain of the vagueness of the law as applied to other contexts. Hoffman Ests. v. Flipside, Hoffman Ests., Inc., 455 U.S. 489, 495 (1982). We must examine defendant's conduct before considering other hypothetical applications of the law. Ibid. A law that is challenged for vagueness as applied need not be proved vague in all conceivable contexts but must be shown to be unclear in the context of the particular case. State v. Cameron, 100 N.J. 586, 594 (1985).

Defendant contends the computer restriction is impermissibly vague because it applies to any electric device with internet access. Defendant however was charged only with unauthorized possession of a computer, which he indisputably knew was clearly proscribed and a violation of his special conditions of CSL. Under the facts of this case, defendant's void for vagueness argument lacks merit.

To the extent defendant contends his special conditions of CSL should be modified, he must make those arguments in the first instance to the parole board. Effective August 16, 2021, several relevant parole board regulations were implemented related to the restriction of internet access and the use of internet-connected devices. N.J.A.C. 10:72-15.4(a) requires that a special condition prohibiting the use of a computer or other device to access the internet be reviewed on an annual basis and sets forth a number of criteria to be considered. These include: (1) whether there is a reasonable basis to preclude such access; (2) whether such access is consistent with the continued rehabilitation of the offender and will not compromise public safety; and (3) whether the offender is in compliance with the conditions of supervision. N.J.A.C. 10:72-15.4(c) gives the individual the right to contest any determination through review by the parole board panel to determine whether to continue, vacate, or modify the conditions imposed. We conclude defendant must exhaust his rights to challenge his conditions of CSL administratively with the parole board before seeking judicial review.

The remainder of defendant's arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2404-22